UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| CHRISTINA M. IVY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-CV-380-JD |
| | ) | |
| ANDREW M. SAUL, Commissioner of | ) | |
| Social Security | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Christina M. Ivy applied for social security disability insurance benefits and supplemental

security income, alleging that she is unable to work primarily due to her chronic pain syndrome,

anxiety, diabetes, depression, high blood pressure, sleep apnea, bilateral carotid artery

obstruction, herniated lumbar intervertebral disc, acid reflux disease, fatty liver, and morbid

obesity. Ms. Ivy was found to be not disabled in a December 2018 decision. Ms. Ivy filed this

appeal, asking the Court to reverse the ALJ's decision and remand for further proceedings based

on alleged errors with the residual functional capacity assessment. The Commissioner filed a

response in opposition, and Ms. Ivy filed a reply. As explained below, the Court remands the

Commissioner's decision.

**I.      Factual Background**

Until she stopped working, Ms. Ivy worked as a cashier. Ms. Ivy suffers from

degenerative disc disease of the lumbar spine with neuropathy in the lower left extremity

(leg)/multi-level arthrokinematics dysfunction of the thoracic-lumbar spine/nerve root disorder;

lymphadenopathy/mass of the right hip; chronic pain syndrome; minimal to mild degenerative

joint disease of the knees; bilateral carpal tunnel syndrome/left carpal tunnel release surgery;

1

obesity; social anxiety; and depressive disorder. (R. 13).

Ms. Ivy applied for benefits in 2015 and 2016. The ALJ issued an unfavorable decision on December 10, 2018. In that decision, the ALJ made the following residual functional capacity:

> [T]he claimant has the physical residual functional capacity to perform a full range of sedentary work as defined in 20 CFR 416.967(a), except for the following. She cannot climb ladders, ropes, or scaffolds and can only climb ramps and stairs, balance, stoop, kneel, crouch, and crawl on an occasional basis. She can use her upper extremities (hands) to handle and finger on a frequent basis. With respect to her workplace environment, she should avoid concentrated exposure to extreme heat; unprotected heights, unguarded moving machinery; and wet, slippery, or uneven surfaces. The claimant has the mental residual functional capacity to understand, remember, and carry out simple instructions and tasks; make judgments on simple work related decisions; she can respond appropriately to usual work situations; and she can deal with routine changes in a routine work setting. As to interactions, she can interact with co-workers and supervisors on an occasional and superficial basis, and should avoid work activity that requires interactions with the general-public.

(R. 15). Finding that Ms. Ivy could have performed other work in the economy, the ALJ found that she was not disabled. The Appeals Council declined review, and Ms. Ivy filed this action seeking judicial review of the Commissioner's decision.

## II.     Standard of Review

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds

could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

## III.    Standard for Disability

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S. C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1.  Whether the claimant is currently engaged in substantial gainful activity;

2.  Whether the claimant has a medically severe impairment;

3.  Whether the claimant's impairment meets or equals one listed in the regulations;

4.  Whether the claimant can still perform past relevant work; and

5.  Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**IV.    Discussion**

Ms. Ivy offers two argument in support of reversal. She argues that the ALJ erred in finding she did not meet or medically equal Listing 1.04, and that the ALJ did not adequately

account for her moderate limitations in concentrating, persisting, and maintaining pace. The

Court finds that the ALJ erred in evaluating whether Ms. Ivy meets or medically equals Listing

1.04(A).

### A.  Meeting or Equaling Listing 1.04(A)

A claimant is eligible for benefits if she has an impairment, or combination of

impairments, which meets or equals an impairment found in the Listing of Impairments. 20

C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1. The Listing describes impairments

that are considered presumptively disabling when a claimant's impairments meet the specific

criteria described in the Listing. 20 C.F.R. § 404.1525(a). The plaintiff has the burden to show

that her impairments meet a Listing, and she must show that her impairments satisfy all of the

criteria detailed in the Listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

Ms. Ivy contends that she meets Listing 1.04(A) as it applies to disorders of the spine.

Listing 1.04(A) states as follows:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal
> stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture),
> resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
> With:
>
>> A.  Evidence of nerve root compression characterized by neuro-anatomic
>>     distribution of pain, limitation of motion of the spine, motor loss
>>     (atrophy with associated muscle weakness or muscle weakness)
>>     accompanied by sensory or reflex loss and, if there is involvement of
>>     the lower back, positive straight-leg raising test (sitting and supine)…

20 C.F.R. pt. 404, Subpt. P, app. 1, § 1.04. In support of her meeting this Listing, Ms. Ivy points

to a CT scan which showed a compromise of the lumbar spinal cord, the threshold requirement

for Listing 1.04, which was never reviewed by a medical expert. Ms. Ivy also points to medical

records which showed neuroanatomic distribution of pain, diminished range of motion, motor

loss and muscle weakness, antalgic gait, positive Faber testing, loss of sensation, and positive

straight-leg-raise tests.

Despite this evidence, the ALJ's short discussion relative to whether Ms. Ivy met any physical Listing said only that she "considered listings 1.02 (Major dysfunction of a joint), 1.04 (Disorders of the spine), and 11.14 (Peripheral neuropathies) and Social Security Rulings 02-1p (Obesity)." (Tr. 14). The ALJ then found that:

> The discussion of the evidence that follows at finding number four shows there is no objective, clinical, or medical opinion evidence to support a finding that the claimant's impairments meet any of the listings in the Regulations. Furthermore, the State agency medical consultant determined the claimant did not have any condition that met a listing.
>
> Accordingly, the claimant does not have a physical impairment or combination of physical impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

(Tr. 14). The ALJ never included a subsequent discussion of whether Ms. Ivy met any Listing, let alone specifically Listing 1.04(A). In response, the Commissioner argues that Ms. Ivy did not provide evidence of muscle atrophy, and that there was evidence in the medical record that contradicted her assertions of muscle weakness and loss of sensation.

The CT scan in question occurred on February 12, 2018. (Tr. 2132). The CT scan showed multiple issues, including but not limited to: Schmorl's nodes, ventral endplate spurs, posterior endplate spurs, disc space narrowing and disc desiccation at L5-S1, and right-sided endplate spur versus a calcified annular protrusion that results in moderate narrowing of the central canal to right of midline with slight cord flattening. (Tr. 2132). Ms. Ivy suffers from degenerative disc disease, and this CT scan provides evidence of a compromised spinal cord, which would satisfy the threshold requirements of Listing 1.04. This CT scan also shows worsening in the spine since her MRI from March 2015, where there was only mild to moderate canal narrowing with no compromise of the spinal cord. (Tr. at 458).

To satisfy 1.04(A), Ms. Ivy needs to provide evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). 20 C.F.R. pt. 404, Subpt. P, app. 1, § 1.04. Ms. Ivy asserts that she meets all of these requirements. She points to treatment records and medical evidence that shows neuroanatomic distribution of pain in the lower back as demonstrated through radiation in the legs. (Tr. 469, 490, 499, 504, 664, 668, 700, 732, 861, 891, 2196). She was noted to have diminished range of motion in her lower back, hip, and lower extremities on several occasions. (Tr. 475, 490, 732, 992, 1754-55, 1786).

She also provided evidence of motor loss or muscle weakness, as she frequently presented with decreased strength, antalgic gait, and positive Faber testing. (Tr. 491, 497,668, 759, 1227.) Ms. Ivy also provided evidence of loss of sensation. (Tr. 454, 469, 494, 504, 668). Positive straight leg tests have also been documented. (Tr. 455, 505, 2072). The Commissioner incorrectly argues that the Listing requires muscle atrophy with associated muscle weakness. This is not a correct reading of the Listing, which requires either atrophy with associated muscle weakness *or* muscle weakness. Ms. Ivy has provided evidence of muscle weakness, and therefore need not provide evidence of atrophy. The Commissioner also argues that Ms. Ivy failed to point to any laboratory results that reveal motor loss accompanied by sensory loss. However, as already discussed, Ms. Ivy pointed to medical notes reflecting muscle weakness accompanied by sensory loss, specifically numbness in her thigh and hip. (Tr. (454, 469, 494, 504, 668). The ALJ failed to discuss this evidence in relation to Listing 1.04(A).

In addition, the Commissioner's position fails to acknowledge that the ALJ's short

7

discussion on whether Ms. Ivy met any Listing did not adequately explain the reasoning behind

the ALJ's decision. While it is true that Ms. Ivy has the burden of showing that her impairments

meet a Listing, *Maggard v. Apfel,* 167 F.3d 376, 380 (7th Cir. 1999), the Seventh Circuit has also

held that an ALJ should mention the specific Listings he is considering and his failure to do so, if

combined with a "perfunctory analysis," may require a remand. *Ribaudo*, 458 F.3d at 583 (an

ALJ should mention the specific listings he is considering and his failure to do so, if combined

with a "perfunctory analysis," may require a remand) (citing *Barnett v. Barnhart*, 381 F.3d 664,

668 (7th Cir. 2004); *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003);

*Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)). In this case, the ALJ did not discuss the

required criteria of Listing 1.04(A). and she performed only a perfunctory analysis of whether

Ms. Ivy's met the requisite limitations. As a result, the ALJ failed to minimally articulate her

justification for rejecting or accepting specific evidence of a disability, thereby requiring remand.

*Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) ("An ALJ must only 'minimally articulate

his or her justification for rejecting or accepting specific evidence of a disability.") (citation

omitted).

Ms. Ivy provided medical evidence that is at the very least indicative of Listing 1.04(A).

If the ALJ found that this medical evidence was outweighed by other evidence in the record, she

was required to explain her logic so that the Court might follow her reasoning. Failure to do so

requires remand, as the Court cannot be sure that the ALJ properly considered all the evidence

when she fails to properly analyze that evidence in the decision.

The ALJ relied on the state agency physicians in finding that Ms. Ivy did not meet or

medically equal a Listing. However, the state agency opinions were issued prior to the CT scan

which found that Ms. Ivy had a compromised spinal cord, which is the threshold requirement for

Listing 1.04. The ALJ's reliance on the state agency opinions fails when the state agency physicians did not have access to the CT scan that showed a compromised spinal cord. The state agency opinions did not even consider Listing 1.04(A) in their opinions or analysis, as they did not have any evidence of a compromised spinal cord. The ALJ's reliance on the state agency medical opinions fails when the state agency physicians did not have access to key evidence.

The ALJ's determination that Ms. Ivy's condition did not meet or medically equal Listing 1.04(A)'s requirements was not supported by substantial evidence. The ALJ failed to properly discuss the Listing or analyze the relevant evidence, and the Court cannot determine whether the ALJ properly considered the medical evidence without a full discussion of the Listing and the medical evidence. Ultimately, the ALJ's inadequate discussion Listing 1.04(A) requires remand.

Finally, the Court addresses Ms. Ivy's request for a direct award of benefits. [DE 15 at 11, 18]. The Court does not find this to be an appropriate remedy here. The Supreme Court has emphasized that "[i]f the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). Further, the Seventh Circuit has also established that a direct award of benefits is a "rare step." *Martin v. Saul*, 950 F.3d 369, 371 (7th Cir. 2020). "An award of benefits is appropriate … only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion – that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). In the instant case, the factual issues have not been resolved. The ALJ did not discuss all of the relevant evidence, and therefore the Court cannot evaluate the ALJ's

decision. The ALJ may come to the same conclusion after proper consideration of the evidence. The Court finds that Ms. Ivy failed to establish that she was entitled to a direct award of benefits and finds that remand is the appropriate remedy.

## CONCLUSION

For those reasons, the Court REVERSES the Commissioner's decision and REMANDS for additional proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.


ENTERED:   August 4, 2020


         /s/ JON E. DEGUILIO
Chief Judge
United States District Court